**\*\* E-filed August 31, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KIMBERLY HUDSON, | No. C11-00939 HRL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ERIC SHINSEKI, SECRETARY OF VETARANS AFFAIRS, | **[Re: Docket No. 12]** |
| Defendant. | |

## INTRODUCTION

Pro se plaintiff Kimberly Hudson ("Hudson"), who worked as a Housekeeping Aide for the Veterans Administration (the "VA"), was terminated from employment because she violated the VA's zero-tolerance drug policy. Hudson sued under Title VII (42 USC 2000e et seq.) for gender discrimination (two allegedly comparable men were not terminated) and for age discrimination (she was younger than the two men). The VA moved for summary judgment on three independent grounds. Even if this Court could excuse her missing the deadline to file an administrative claim, and even if it could overlook her failure ever to respond to Requests for Admissions which, by law being deemed admitted, would mandate a judgment in favor of defendant, there is still the problem with her evidence. She does not have any admissible evidence that supports her claims on their merits. For the reasons discussed below, the Court grants summary judgment for the VA.

## BACKGROUND

1    The VA has a zero-tolerance drug policy, the purpose of which is "to ensure illegal drug use
2 is eliminated and the workplace is safe, healthful, productive, and secure." Docket No. 13 ("Scharf
3 Decl."), Hudson Deposition Transcript ("Hudson Depo."), Ex. 12 at 1.[1] Under the policy, employees
4 are subject to drug testing "if there is reasonable suspicion of on-duty usage or impairment while on
5 duty." Id. at 2. Reasonable suspicion is established if there is documented evidence of "observable
6 phenomena, such as direct observation of drug use or possession and/or the physical symptoms of
7 being under the influence of a drug." Id. Hudson testified that she was aware of the zero-tolerance
8 policy, and agreed it was a reasonable policy to have in place for employees "because they work
9 around patients and different health-hazard machinery." Hudson Depo. at 68:6-25, 69:7-17. She also
10 admitted knowing that she could be drug tested if there was reasonable suspicion to believe she had
11 been working under the influence. Id. at 68:19-24. She also testified that she understood that a
12 consequence of failing a drug test could include termination. Id. at 67:8-15; Ex. 10 at 1.

13    On January 13, 2009, Jeff Ma ("Ma"), an Alameda County Furlough Worker, notified VA
14 Supervisor Robert Ortega ("Ortega") that he had seen Hudson standing in a public area of the VA
15 and that "[she] reeked of a marijuana smell and her eyes appeared glossy." Ex. 7. When VA police a
16 short time later mentioned this information to Hudson during an interview for an unrelated
17 investigation,[2] she denied being under the influence at the time Ma observed her but admitted that
18 she had smoked marijuana in the previous 30-60 days. Hudson Depo. at 64:13-25; Ex. 9 at 7. On
19 February 2, Hudson was ordered to undergo a drug test based on Ma's earlier reported observation.
20 Ex. 10 at 1. The test results came back positive for marijuana. Ex. 11. When later asked if she
21 disputed the accuracy of the test results, Hudson replied, "No." Hudson Depo. at 67:25-68:5.

22    On June 17, 2009, Gary Hiatt ("Hiatt"), Chief of Hudson's department at the VA, sent
23 Hudson a notice advising her that he was recommending her termination from employment. Ex. 13.
24 The notice indicated that the reasons for her proposed termination were the failed drug test and two

---

[1] Unless otherwise noted, all exhibits cited hereafter refer to exhibits to the Hudson Deposition Transcript, which is attached to the Scharf Declaration.

[2] The VA was investigating a co-worker for selling marijuana at the VA facility and interviewed Hudson as part of this investigation. Ex. 4.

2

prior disciplinary actions taken against her.[3] Id. The notice also informed her that she could reply before final action was taken. Id. Hudson did so in writing, again admitting that she had smoked marijuana but also asking for a second chance because of her enrollment in a drug treatment program. Ex. 14. On July 21, 2009, Elizabeth Freeman ("Freeman"), Director of the VA, sent Hudson a letter of termination which stated that, after considering the details of her situation, mitigation of the penalty was unwarranted. Ex. 15.

Later that month, Hudson contacted an EEO counselor with the VA to contest her termination. Hudson Depo. at 30:9-20. She also retained non-attorney Lamar Allen ("Allen") to represent her. Ex. 4. On August 3, 2009, Hudson received a Notice of Rights and Responsibilities, which told her that <u>when</u> she received a Notice of a Right to File a Discrimination Complaint, she would have fifteen-days to do so. Ex. 1 at 2. In the meantime, the parties voluntarily submitted to mediation of the dispute, and a session was held on October 23. A subsequent session was contemplated but not yet scheduled.

On October 27, 2009, Hudson received the Notice of her Right to File a Discrimination Complaint ("Notice"). Ex. 2. The first paragraph of the Notice stated in bold font: "**If your client decides to file a formal complaint, s/he must do so WITHIN FIFTEEN CALENDAR DAYS OF RECEIPT OF THIS NOTICE.**" Id. at 1. The second paragraph further stated in bold font: "**Please note that the <u>15-day calendar day</u> time frame will not be extended due to your client's need to seek my assistance in completing this form**." Id. Hudson gave the Notice to Allen, who did not mail Hudson's formal EEO complaint until December 1, 2009 – twenty days late.[4] Ex. 3. Along with the untimely submission Allen included a cover letter which intimated that he held off submitting it until after a second (unsuccessful) mediation session that took place on November 23. Ex. 4. Hudson later admitted that she read and understood the significance of this fifteen-day deadline for protecting her potential claim and testified that it would have been more responsible to

---

[3] On March 26, 2007, Hudson was charged with "thirty minutes Absent Without Official Leave (AWOL)" and was denied pay for that time. Ex. 5. On August 4, 2008, Hudson was suspended for seven days <u>with</u> pay for verbally abusing her supervisor Robert Ortega. Ex. 6. This penalty was a negotiated alternative to the traditional five-days <u>without</u> pay penalty for similar conduct, and Hudson was informed that the penalty could be considered in the event of future misconduct. See id.

[4] Fifteen calendar days from October 27, 2009 was November 11, 2009.

submit the formal complaint while mediation was ongoing. Hudson Depo. at 34:9-23, 43:2-8. Neither she nor Allen ever contacted the VA to inquire about whether the pending mediation session extended the deadline or – if not – whether an extension could be granted. Id. at 39:10-25. Ultimately, the VA's Office of Resolution Management dismissed Hudson's complaint for being untimely filed. Id. at 43:17-20.

## LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. See FED. R. CIV. P. 56(e)(2); Nissan Fire & Marine Ins. Co., Ltd., 210 F.3d at 1102. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248-49.

"When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex, 477 U.S. at 325). Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that there is a genuine issue for trial. Id.; see also

Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (noting that the Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony") (citations omitted).

## DISCUSSION

The VA argues that summary judgment is proper for three reasons. First, it points out that Hudson did not timely file her EEO complaint. Second, it says that, because Hudson failed to respond to its Requests for Admission, she effectively admitted that she cannot make out a case of discrimination. Finally, it contends that notwithstanding any procedural bar or discovery "default," Hudson's complaint has no evidentiary support.

A.  The Untimeliness of Hudson's EEO Complaint

"To preserve her right to maintain a suit alleging employment discrimination against an agency of the United States, a claimant must exhaust her administrative remedies by filing a claim of discrimination with the allegedly offending agency in accordance with published procedures." Leorna v. United States Dep't of State, 105 F.3d 548, 550 (9th Cir. 1997) (citing Brown v. General Serv. Admin., 425 U.S. 820, 832 (1976)). Those procedures first requires that the claimant initiate contact with an EEO counselor within forty-five days of the date of the alleged discriminatory act. 29 C.F.R. § 1614.105(a)(1). If the matter is be resolved informally, a complaint must be filed with the agency within fifteen days of the conclusion of the pre-complaint processing. 29 C.F.R. § 1614.106. A complaint that fails to comply with the applicable time limits or that raises a matter that has not been brought to the attention of a counselor will be dismissed. 29 C.F.R. § 1614.107. "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

As previously mentioned, Hudson admitted that her complaint was submitted weeks after it was due. However, she argues that equitable estoppel and equitable tolling should apply.

1.  Equitable Tolling

The doctrine of equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing

period." Leorna, 105 F.3d at 551 (citations omitted). "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000) (citing Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946)). The doctrine does not apply "where a claimant is aware of the filing requirements yet fails to file a timely complaint due entirely to a lack of diligence." Villalvaso v. Odwalla, Inc., No 1:10-CV-02369-OWW, 2011 WL 1585604, at *6 (E.D. Cal. Apr. 25, 2011).

Hudson acknowledged receiving the Notice of her right to file an EEO complaint and admitted seeing and understanding the significance of the fifteen-day filing deadline. Hudson Depo. at 34:9-23. Hudson's excuse for not timely filing the complaint was that she expected her representative Allen to timely file it on her behalf. See id. at 36-39. Allen's excuse for not timely filing the complaint was that he was awaiting the conclusion of the ongoing mediation. See Ex. 4. Nevertheless, Hudson admitted that the responsible thing to do would have been to timely file her complaint during mediation. Hudson Depo. at 43:2-8. Having had actual notice of the deadline and failing to meet it, Hudson cannot now rely on mediation talks to invoke equitable tolling. Villalvaso, 2011 WL 1585604, at *4. Nor can she rely on the failure of her representative Allen to timely file as grounds to invoke equitable tolling because she, herself, was ultimately responsible for ensuring compliance with the administrative procedures.

2. Equitable Estoppel

The doctrine of equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." Johnson v. Henderson, 314 F.3d 409, 414 (9th Cir. 2002). As the Ninth Circuit has explained:

> A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

Id. (quoting Santa Maria, 202 F.3d at 1176). Essentially, equitable estoppel applies "if the defendant takes active steps to prevent the plaintiff from suing in time." Santa Maria, 202 F.3d at 1176-77.

Hudson's opposition papers, for the first time, allege that the VA's conduct misled her into missing the filing deadline for her formal EEO complaint. She contends that the VA knew or should have known that its letter of intent to mediate on October 23, 2009 would confuse both her and Allen, because they are not attorneys. Docket No. 17 ("Opp'n") at 7:7-18. This contention, however, contradicts her deposition testimony, in which she stated that she understood the significance of the 15-day filing deadline, knew that mediation "was never a guarantee," and agreed that the responsible thing to do would have been to timely file the EEO complaint during the ongoing mediation process. See Depo. at 42:1-43:8. In any event, her argument is unavailing, as her new contention cannot be used to create a genuine issue of material fact. Scamihorn v. General Truck Drivers, 282 F.3d 1078, 1085 (9th Cir. 2002) ("A party may not 'create his own issue of fact by an affidavit contradicting his prior deposition testimony . . . .'").

In sum, Hudson does not make the required showing that the VA used the prospect of mediation as a vehicle to mislead her into missing the filing deadline. It is clear that Hudson and Allen were both aware of the filing deadline, and she has not cited any statements or actions made by the VA during the course of mediation that may have reasonably lulled her into inaction. The doctrine of equitable estoppel does not apply here.

B. Requests for Admission Deemed Admitted

Federal Rule of Civil Procedure 36 requires responses to Requests for Admission within thirty days of service. FED. R. CIV. P. 36(a). On March 31, 2011, the VA served Hudson with three requests for admission, asking her to "[a]dmit that [she] cannot establish a prima facie case of discrimination"; "[a]dmit that all action being challenged by [her] were taken for legitimate, non-discriminatory, non-retaliatory, and non-pretextual reasons"; and "[a]dmit that [she] did not sustain any damages as a result of [the VA's] conduct." Ex. 16 at 2. Notably, the VA's three Requests for Admission were accompanied by this admonition: "***Please note that your failure to respond to these requests for admissions in a timely manner will cause these facts to be deemed admitted.***" Id.

Hudson does not dispute the VA's testimony that she never responded to its requests. See Scharf Decl. at 2:1-3. And, by failing to respond to them, they are deemed admitted. See FED. R.

7

CIV. P. 36(a); Fed. Trade Comm. v. Medicor, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002). The Court might have allowed Hudson to withdraw her admissions if she made an appropriate showing, but she never made the request. See FED. R. CIV. P. 36(b). However, even if this Court were to overlook Hudson's admissions, she is still unable to establish a prima facie case of discrimination or show that the VA's proffered explanation for her termination was pretextual.

C. Reverse Age Discrimination

Age discrimination is not an actionable claim under Title VII, but rather is covered by the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA").[5] Furthermore, Hudson claims that she was discriminated against in favor of *older* VA employees Ricky Mason ("Mason") and Johnnie Davis ("Davis"). In effect, she says she was the victim of *reverse* age discrimination. The ADEA, though, does not protect against reverse age discrimination. Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004) (holding that ADEA "does not mean to stop an employer from favoring an older employee over a younger one"). Accordingly, this is not a legally cognizable claim for relief.

D. Gender Discrimination

1. Prima Facie Case

Title VII discrimination claims follow the traditional burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, Hudson must first establish a prima facie case by offering direct or circumstantial evidence of discriminatory intent, or by satisfying a four-step inquiry. Vazquez v. Cnty. of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802). Since Hudson has no direct or circumstantial evidence of discriminatory intent, her burden must be satisfied by showing: (1) she is a member of a protected class; (2) she was qualified for her job; (3) she experienced an adverse employment action; and (4) similarly-situated individuals outside of her protected class were treated more favorably. Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004); cf. McDonnell Douglas, 411 U.S. at 802.

---

[5] Title VII makes it unlawful for an employer to discriminate based on "race, color, religion, or sex," not age. 42 U.S.C. § 2000e-2.

8

Only the fourth prong is at issue here and now. Individuals are similarly situated "when they have similar jobs and display similar conduct." Vazquez, 349 F.3d at 641. The co-worker need not be *identically* situated, but rather similarly situated in "all material respects." Bowden v. Potter, 308 F. Supp. 2d 1108, 1117 (N.D. Cal. 2004). Seemingly identical conduct may not be comparable if the employees have different disciplinary records. Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003). A plaintiff's failure to identify a similarly situated individual is dispositive. Hewlett Packard Co., 358 F.3d at 603.

Hudson has not provided admissible evidence to support her contention that either Mason or Davis – two male VA employees – is similarly situated to her. Hudson says that she heard from a co-worker that Mason once tested positive for marijuana but was not terminated, though she has no personal knowledge of this and has not heard of any other disciplinary problems involving Mason. Hudson Depo. at 86:1-88:2. She also claims that Davis was partly the focus of an investigation that led to the firing of another employee for selling marijuana, but that he was not drug tested or removed. Id. at 76:15-82:15. Although Hudson contends that she once smoked marijuana with Davis and has seen him working while under the influence of marijuana, she did not report him and is not aware of anyone else reporting him to their superiors. Id. at 77:22-80:11. She further contends that Davis has been "written up" for different violations, though she does not know when or why this occurred. Id. at 80:16-81:2. On the contrary, Cerefino Perez, a VA Human Resources Specialist, testified that neither Mason nor Davis: (1) has been observed to be under the influence of marijuana while at work; (2) has been ordered to take a drug test; or (3) has a disciplinary history similar to that of Hudson. Docket No. 20 ("Perez Decl.") at ¶¶ 4-6.

The Court concludes that Hudson has not established a prima facie case of gender discrimination because the two employees she cites are not similarly situated to her and because she provides no evidence of discriminatory intent.

2. <u>Pretext</u>

Even if the Court were to find that Hudson has established a prima facie case of gender discrimination, she must show that the VA's proffered reason for her termination – her failed drug test coupled with two prior disciplinary actions – was pretextual. Pretext can be proven directly, by

9

showing that unlawful discrimination more likely motivated the employer; or indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable. Chuang v. Univ. of Cal. Davis, 225 F.3d 1115 (9th Cir. 2000). Pretext is "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Keys, 2005 WL 1958659, at *5-6 (citing Richter v. Hook-SupeRX, Inc., 142 F.3d 1024, 1030 (7th Cir. 1996)).

Hudson has not presented any evidence that Freeman or Hiatt harbored any gender animus when they ordered her termination or that they misrepresented their reasons for doing so. See Hudson Depo. at 73:13-75:8. When asked why she believed discrimination played a role in her termination, Hudson replied: "That's what I'm feeling," implying that it was essentially her subjective belief. Id. at 82:1-3. A complainant's subjective belief, however, is insufficient to prove pretext. Schuler v. Chronicle Broad. Co., 703 F.2d 392, 393 (9th Cir. 1983). And when asked if she had any other evidence of discrimination other than the allegedly more favorable treatment Mason and Davis received, Hudson replied: "No, not that I recall." Id. at 82:7-12.

The Court concludes that Hudson has not established that the VA's legitimate, non-discriminatory explanation for terminating Hudson's employment was pretextual.

E. Hudson's Remaining Claims

Title VII expressly limits Hudson's remedies to those enumerated in the statute. Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976). The purpose of Title VII was to create "an exclusive, pre-emptive administration and judicial scheme for redressing federal employment discrimination," therefore, Hudson may not attach additional "make weight" claims for relief under state law onto her Title VII complaint. See id. Hudson's claims for intentional and negligent infliction of emotional distress are unavailing and, in any event, completely unsupported by evidence. And, her claim for entrapment is not an actionable civil claim but rather a potential defense to a criminal charge, and thus has no application here.

**CONCLUSION**

Based on the foregoing, the VA's motion for summary judgment is GRANTED. The Clerk of the Court shall close the file.

**IT IS SO ORDERED.**

Dated: August 26, 2011

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C11-00939 HRL Notice will be electronically mailed to:**

James A. Scharf          james.scharf@usdoj.gov, mimi.lam@usdoj.gov

**Notice will be mailed to:**

Kimberly Hudson
37651 Murietta Terrace
Fremont, CA 94536

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**